IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM WHITAKER, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOLY FAMILY SOCIAL SERVICES, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

### I. PRELIMINARY STATEMENT

By this action, Plaintiff, William Whitaker, seeks compensatory and punitive damages, as well as costs and attorneys' fees, as a result of being terminated by Defendant, Holy Family Social Services, because of his race. Defendant's actions in this regard violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., and the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

### II. JURISDICTION

1. This court has jurisdiction of this matter by virtue of:

   a) 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States; and

   b) 28 U.S.C. § 1367, in that this is a civil action of which this federal district court has original jurisdiction and certain of Plaintiff's claims are brought under Pennsylvania state law which are related to the federal claims in this action in that they form part of the same case or

a

controversy under Article III of the Constitution of the United States.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

3. On December 18, 2004, Plaintiff filed a timely charge against the Defendant with the Pennsylvania Human Relations Commission ("PHRC"), alleging unlawful race discrimination, in violation of Title VII of the Civil Rights Act of 1964. Plaintiff dual filed this charge with the Equal Employment Opportunity Commission ("EEOC").

4. On March 6, 2006, the EEOC provided Plaintiff with notification of his right to institute a civil action with the appropriate United States District Court to obtain relief for the discrimination which he has suffered.

### III.  PARTIES

5. Plaintiff, William Whitaker ("Mr. Whitaker"), is an African American adult male, who resides at 1737 Pierce Street, Aliquippa, Pennsylvania, 15001. At the time of the incident complained of in this lawsuit and presently, he was and is a citizen of the Commonwealth of Pennsylvania in the United States of America.

6. Defendant, Holy Family Social Services ("Holy Family"), is a corporation within Holy Family Institute, which provides residential treatment to children who have been removed from their homes because of family crisis, abuse or neglect. Holy Family's residential treatment facility for Western Pennsylvania is located at 8235 Ohio River Boulevard, Pittsburgh, Pennsylvania 15202.

## IV. STATEMENT OF CLAIM

7. On May 20, 2002, Mr. Whitaker began employment with Holy Family as a primary child care giver.

8. Prior to his employment with Defendant, Mr. Whitaker had worked for approximately 10 years at the Burnett-Bayland Juvenile Home for Boys, a residential treatment facility for troubled children located in Houston, Texas. Mr. Whitaker's responsibilities at Burnett-Bayland included supervising the children, providing meals, assisting the children with their homework, and transporting the children to and from school and other recreational activities.

9. Mr. Whitaker performed similar tasks in his role as a primary child care giver for Holy Family. He prepared meals with the children, supervised their daily chores, tutored the children with their homework, and was involved in their recreational activities.

10. During his approximate two years of employment at Holy Family, Mr. Whitaker formed good relationships with the children and was an excellent and dependable employee. He often worked double shifts, approximately 16 hours per day for six days per week.

11. Prior to the incident that occurred on April 29, 2004 that resulted in Mr. Whitaker being terminated, he had no violent or physically aggressive interactions with any of the children at Holy Family.

12. Mr. Whitaker was responsible for supervising four children, Jason Roberts ("Jason"), Brandon Wallace ("Brandon"), Greg Mankie ("Greg") and Robert Thomas, all of whom lived in the same apartment.

13. On the afternoon of April 29, 2004, Mr. Whitaker was sitting on a sofa in one of the Holy Family apartments and was talking on his cell phone to a friend, when Jason, age 17 at the

time, threw a cigarette lighter at Mr. Whitaker. Although the lighter did not hit Mr. Whitaker, it passed by Mr. Whitaker's head.

14. Mr. Whitaker immediately turned, saw Jason, and asked why he had thrown a lighter in his direction. Jason responded to Mr. Whitaker's question by cursing at him.

15. Mr. Whitaker assumed Jason was angry because he had confiscated a lighter from Jason earlier that same week; possession of cigarette lighters was prohibited by Holy Family.

16. Next, Mr. Whitaker stood up from the sofa and approached Jason to discuss his inappropriate behavior.

17. Mr. Whitaker saw that Jason had his hands in his pockets, and was concerned about what else he may have in his pockets to throw at him. Therefore, Mr. Whitaker asked Jason in a non-threatening tone to see his hands, and asked him if he had anything else in his pockets.

18. Jason responded by becoming violent and out of control. He pushed Mr. Whitaker away from him, began swinging and flailing his arms and continued to curse at Mr. Whitaker and use derogatory language toward him, and punched Mr. Whitaker on the side of his head.

19. Mr. Whitaker reacted to Jason's actions by grabbing his hands in an attempt to restrain Jason in the manner taught by Holy Family.

20. Mr. Whitaker was unsuccessful in his initial attempt to restrain Jason due to his out of control physical response.

21. Next, Mr. Whitaker's continued attempt to restrain Jason, who was still out of control, led to the two of them falling onto the sofa and then rolling onto the floor.

22. At that point, Brandon and Greg, apartment mates of Jason's at Holy Family, went next door to an adjoining apartment and asked another child care giver, Paris Akins ("Mr. Akins"),

to assist Mr. Whitaker with the restraint. Specifically, Brandon and Greg told Mr. Akins that Mr. Whitaker needed his help.

23. Mr. Akins arrived shortly thereafter and assisted Mr. Whitaker in successfully restraining Jason. After Mr. Akins arrived, Jason continued to swear at Mr. Whitaker and flail his body in an attempt to escape the restraint.

24. During the course of the restraint, Jason told Mr. Whitaker that he was going to get him fired.

25. Throughout the entire incident, Mr. Whitaker never hit or struck Jason. Mr. Whitaker may have inadvertently bumped heads with Jason during the course of the restraint. However, Mr. Whitaker's actions toward Jason during the course of the restraint were non-aggressive.

26. Jason sustained injuries as a result of the aforementioned fall onto the sofa and thereafter floor, and/or as a result of contact with Mr. Whitaker during the course of the attempted restraint.

27. Immediately after the incident, Mr. Whitaker noticed Jason had a bruise on his eye and retrieved ice for him from the kitchen.

28. Thereafter, Mr. Whitaker briefly informed his supervisor, Scott Schreiber ("Mr. Schreiber"), that he had just restrained Jason, and the reason he had to do so. Mr. Whitaker told Mr. Schreiber that Jason had flipped out, pushed him and punched Mr. Whitaker, and that he had to restrain Jason.

29. Mr. Schreiber instructed Mr. Whitaker to write a brief report about the incident in a Holy Family Social Services Restraint Incident Report Form, and Mr. Whitaker did so. A copy of this form completed by Mr. Whitaker on April 29, 2004, is attached hereto as Exhibit 1, and is

incorporated herein by reference.

30. After the incident, Greg told Mr. Whitaker, in the presence of Mr. Schreiber, about an altercation that had occurred earlier in the day between Jason and Brandon and that Jason's anger on the day in question stemmed from this fight. During that conversation, Greg also told Mr. Whitaker that earlier that day, while in a classroom at school, Brandon hit Jason on top of his head after Jason had threatened to kill Brandon, while making gun-shooting motions at him.

31. After Mr. Whitaker finished drafting the incident report, Mr. Schreiber sent Mr. Whitaker home for the rest of the day.

32. On May 3, 2004, Mr. Whitaker received a phone call from Mr. Schreiber, was told that his written report did not match Jason's story, and that he was terminated, effective immediately.

33. Between the date of the incident and the date on which Mr. Whitaker was terminated, no one from Holy Family called or interviewed Mr. Whitaker to further investigate the matter, and hear Mr. Whitaker's side of the story.

34. Holy Family's investigation into the incident was intentionally or arbitrarily insufficient, including, but not limited to, the following ways:

    a. Holy Family chose not to interview Mr. Whitaker and get a detailed account of the incident from him;

    b. Holy Family ignored and/or arbitrarily failed to properly review the report of the emergency department that examined Jason after the incident. Had Holy Family reviewed and/or properly considered the information contained in the Heritage Valley Health System Emergency Department Report, it would have known that Jason's "Past medical history" was "Significant for being physically aggressive which he has been medicated for." This Heritage Valley Health System

6

Emergency Department Report (pages 1 and 2 - Plaintiff does not have page 3 in his possession) is attached hereto as Exhibit 2, and is incorporated herein by reference;

   c. Holy Family chose not to question Brandon and Greg about any altercations or other unusual interactions which had occurred earlier in the day involving Jason, even though the three boys were in the same class at school, in addition to being apartment mates. Had it done so, Holy Family would have learned about what had happened earlier that day with regard to Jason's interactions with Brandon described above in paragraph 30;

   d. Holy Family chose not to question Brandon about any conversations he had with Jason just prior to the incident. Had it done so, it would have learned that Jason told Brandon that he was angry and might leave and/or run away from Holy Family; and

   e. Holy Family chose to believe the unquestioned story of Jason, a young man with numerous problems, who had a history of being physically aggressive and had a motive to not tell the truth, as he had spent time in jail, and did not want to return there.

35. Under Holy Family's rules, a one-person restraint is justified if a child is hurting himself or others.

36. Because of Jason's physically aggressive actions toward Mr. Whitaker, he had no choice but to perform the restraint by himself until Mr. Akins arrived to help him.

37. With regard to the incident in question involving Jason and Mr. Whitaker, had Holy Family conducted any type of reasonable investigation, it would have concluded that Mr. Whitaker conducted a proper and lawful restraint of Jason.

38. Holy Family's intentionally and/or arbitrarily deficient investigation led to child abuse charges being filed against Mr. Whitaker. The report was initially "indicated," but after an appeal, and a hearing before an Administrative Law Judge and testimony from numerous witnesses, the

Department of Public Welfare agreed to dismiss the charges because it did not have the evidence needed to show that Mr. Whitaker committed abuse. Accordingly, Mr. Whitaker's abuse report was expunged.

39. After its intentionally deficient investigation, Holy Family provided false information to the Ross Township Police Department. As a result, Mr. Whitaker was arrested, charged with simple assault and endangering the welfare of children, and thrown in jail for four nights. Thereafter, the charges against Mr. Whitaker were withdrawn.

40. Upon information and belief, Holy Family did not terminate similarly situated white employees after reports of having allegedly committed similar or more serious actions during similar incidents with minor children.

41. Defendant's investigation was intentionally and/or arbitrarily inadequate and was designed in a way to justify terminating Mr. Whitaker.

42. Defendant's stated reasons for terminating Mr. Whitaker were pretextual. Defendant terminated Mr. Whitaker because of his race, and not because of the alleged child abuse allegations.

43. As a result of Defendant terminating Mr. Whitaker, he has suffered substantial injuries to his career, as well as to his reputation, emotional pain and suffering, mental anguish, inconvenience, and other nonpecuniary losses.

## V. CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT

44. Plaintiff incorporates by reference the averments contained in paragraphs 1 through 43 as if set forth fully herein.

45. Defendant, Holy Family, has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Mr. Whitaker with respect

to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e) et seq.

46. Defendant's unlawful acts, practices, policies and/or procedures in employment were induced in whole or in part by its intent to discriminate against Mr. Whitaker on the basis of his race.

47. Mr. Whitaker has been directly harmed as a result of these violations as is fully set forth above.

**COUNT II - VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**

48. Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 47 as if set forth fully herein.

49. Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies and procedures in discriminating against Mr. Whitaker with respect to compensation, terms, privileges, or conditions of employment, in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

50. Defendant's unlawful acts, practices, policies, and/or procedures in employment were induced, in whole or in part, by its intent to discriminate against Mr. Whitaker on the basis of his race.

51. Mr. Whitaker has been directly harmed as a result of these violations as is fully set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendant's conduct to be unlawful and in willful violation of Plaintiff's rights;

(c) Award Plaintiff compensatory and wage loss damages, including back pay, front pay, lost fringe and other benefits of employment;

(d) Award Plaintiff compensatory damages for emotional distress, embarrassment, humiliation, inconvenience, and damage to his reputation;

(e) Award Plaintiff costs and attorneys' fees, including the attorneys' fees expended for prosecuting the child abuse appeal; and

(f) Grant such other relief as the Court deems just and appropriate.

Respectfully Submitted,

**JURY TRIAL DEMANDED**

Date: May 4, 2006

s/ David B. Spear
David B. Spear
PA Id. No. 62133

Natalie M. Kreter
PA Id. No. 93192

MARKEL, SCHAFER & GOLDMAN, P.C.
Firm No. 456
2200 Lawyers Building
Pittsburgh, PA 15219
(412) 281-6488